CHRISTOPHERSEN v. DONALD S. S. CO.

THE AURORA.

(Circuit Court of Appeals, Second Circuit. May 18, 1911.)

SHIPPING (§ 40*)—CONSTRUCTION OF CHARTER PARTY—DISCHARGING BERTH.

A time charter party provided that the vessel should discharge where the charterer should direct, provided she could always safely lie afloat at any time of tide, "except as provided below"; the latter words being written in the printed form. Then followed provisions that the steamer might be required to discharge in a mud berth at specified ports, and might be employed to and from certain ports, at some of which there was no place where she could discharge and lie afloat at all times of tide. She was sent with the master's consent to a port not specified, but where she could only discharge in a mud berth. Held, that the printed provision for discharging only where she could always lie afloat was waived, at least at the latter port, and that her refusal to discharge there in a mud berth was a breach of the contract.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 40.*]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Anders Christophersen, master of the steamer Aurora, against the Donald Steamship Company, with cross-libel against the Aurora. Decree (175 Fed. 1002) for cross-libelant, and libelant appeals. Affirmed.

J. Parker Kirlin and Charles R. Hickox, for appellant.

Hunt, Hill & Betts (Geo. Whitefield Betts, Jr., and William H. Peck, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The master of the Norwegian steamer Aurora filed this libel for balance of charter hire and the time charterer a cross-libel to recover damages caused by the master's refusal to discharge cargo at the Ft. Lawrence wharf in the port of Amherst in the upper end of the Bay of Fundy. The cargo was subsequently discharged at St. John. The District Judge decided the causes in favor of the charterer, and the parties having stipulated that the amount of the extra expenses incurred by the charterer, less any amount due for charter hire and overtime of crew was $2,400, the libel of the master was dismissed, with costs, and a decree for $2,400, with costs, entered in favor of the cross-libelant. The master took an appeal from each decree.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The cause turned upon the question whether the master rightfully refused to discharge his cargo of pig iron and lumber from Jacksonville, Fla., to the port of Amherst in a mud berth; that is, one in which the steamer would lie aground at low tide at the Ft. Lawrence wharf.

The charter party was for two months between safe ports and contained the following material clauses:

"8. That the cargo or cargoes to be laden and/or discharged in any dock or at any wharf or place that the charterers or their agents may direct, provided the steamer can always safely lie afloat at any time of tide except as provided below."

The latter four words were written and referred to the following written clauses:

"20. It is understood that steamer is to load at Hillsboro in the same mud berth as steamer Nora."

"29. It is also understood that charterers have privilege of loading steamer at a mud berth at Windsor providing it is safe to do so. It is understood that steamer to be employed in the plaster trade between Hillsboro and north of Hatteras ports, or any safe trade, and in case steamer discharges at Newark Plaster Co.'s wharf at Newark, N. J., that steamer will discharge aground at low tide same as other vessels.

"At Newton Creek steamer to discharge at a perfectly safe mud berth. It is understood charterers have the privilege of loading steamer at any plaster port where she can safely load in mud berth.

"At New Haven steamer to discharge at a perfectly safe mud berth ir necessary."

It is true that upon a literal construction of the foregoing provisions the steamer could not be required to discharge at any mud berth in the Bay of Fundy. This construction, however, cannot be adopted, because there are no other berths, at least in the upper bay, where Hillsboro is, to and from which port the charter party recites the steamer was to trade, nor in the port of Amherst, where she was to deliver the cargo in question. The parties cannot have intended that she should make her return voyages to Hillsboro in ballast, or should deliver this cargo in a berth where she could always lie afloat, because they knew there was no such berth at Amherst.

The case presents the ordinary collision between printed and written clauses in commercial documents, especially where the latter are inartificially drawn. The master must be held to have waived, at least on this voyage, his right to discharge in a berth where the steamer could always lie afloat. And if it were not so held he could not avail of the objection in this court for the first time, not having set it up in his answer to the cross-libel, nor in his proofs at the trial, nor in his assignments of error. He was entirely willing to discharge in mud at another wharf a little further up the river and his objection to the berth at the Ft. Lawrence wharf was solely that it and its approaches were not safe for his steamer. Though he acted in entire good faith, the District Judge found as a fact that he was wrong and in this conclusion we concur.

Decrees affirmed, with interest and costs.